IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00621-WDM-BNB

SECURITIES AND EXCHANGE COMMISSION,

   Plaintiff,

v.

JOSEPH A. FERONA JR.,
D/B/A CASTLE ROCK TRADING COMPANY, AND
D/B/A THE GLOBAL PROSPERITY FUND,

   Defendants,

CHERYL FERONA,

   Relief Defendant,

BYRAN STARNES and
LISA STARNES,

   Intervenors.

## ORDER ON MOTION TO DETERMINE PRIORITY

Miller, J.

This matter is before me on the Motion to Determine Priority and Interests in Proceeds from Sale of Parker Property (Doc. No. 81) filed by Intervenors Bryan Starnes and Lisa Starnes (Intervenors). The motion concerns the interests of claimants to certain real property in Parker, Colorado (Parker Property) once owned by the Defendant Joseph A. Ferona, Jr. (Joseph). The Parker Property was subject to deed trust for the benefit of New Century Mortgage Corporation (New Century). Plaintiff Securities and Exchange Commission (SEC or Plaintiff) and Trustee Christine J. Jobin

(Trustee) oppose the motion. For the reasons that follow, the motion will be granted and Trustee will be directed to distribute proceeds to the Intervenors.

The SEC commenced this action against Defendant Joseph, individually and doing business as Castle Rock Trading Company and The Global Prosperity Fund in April 2005. The complaint alleged that Defendant had operated a Ponzi scheme in order to defraud investors. On May 4, 2005, Judge Philip Figa entered an order freezing the assets of Joseph and his d/b/a entities. However, on April 12, 2005, shortly before the asset freeze, Joseph quitclaimed his interest in the Parker Property to his wife, Relief Defendant Cheryl Ferona (Cheryl) for no consideration.[1]

The freeze order, issued pursuant to Section 42(d) of the Investment Company Act [15 U.S.C. § 80a-41(d),] extended to all assets of Joseph, his business entities, "and those persons in active concert and participation with them." These persons were ordered to hold and retain and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of their funds and assets, including those "held directly or indirectly for [the defendants'] benefit." Order of Asset Freeze (Doc. No. 28).

On May 5, 2005, Intervenors filed a complaint in Douglas County District Court against both Joseph and Cheryl, asserting, *inter alia*, that the Parker Property was fraudulently conveyed and seeking the imposition of a constructive trust against the

---

[1] Joseph and Cheryl purchased the property, a residence, located at 12241 South Season Court, Parker, Colorado on March 16, 2005 with proceeds gained as a result of the conduct alleged in the complaint. At the time of the purchase of the Parker Property, Joseph and Cheryl granted a deed of trust for the benefit of New Century Mortgage Corporation, securing a note from the Feronas to New Century in the amount of $493,032.

2

Parker Property. On the same day, Intervenors filed a Notice of Lis Pendens against the Parker Property. On May 31, 2005, Cheryl was added as a relief Defendant in this action by a First Amended Complaint. On June 3, 2005, I entered an order extending the asset freeze over Cheryl's property. On August 18, 2005, the Douglas County District Court entered a default judgment of $266,192.00 in favor of Intervenors and against the Feronas. A transcript of the judgment was recorded on August 18, 2005. On October 6, 2005, I allowed Intervenors to intervene in this action for the purpose of preserving their claim to a priority interest in the Property. Pursuant to 15 U.S.C. § 80a-41(d), I took jurisdiction over the Parker Property, authorized its sale and appointed a trustee by order dated October 13, 2005 (Doc. No. 57). The Parker Property was sold, the holder of the deed of trust was paid and the net proceeds of $39,913.00 were deposited in an account at the Registry of this Court. In their motion, Intervenors seek a priority right to those net proceeds. Trustee and the SEC oppose the motion and request that the proceeds be distributed to all the defrauded investors.

Intervenors assert that they have a prior judgment lien against the Parker Property based upon the filing of their *lis pendens* on May 5, 2005, while the property was titled solely in the name of Cheryl and before the asset freeze was specifically extended by my June 3, 2005 order to all assets held by Cheryl. Intervenors argue that under Colorado law their ultimate state court judgment against both Defendants, entered July 28, 2005, and a transcript of which was recorded on August 18, 2005, is a lien against the Parker Property with a priority date that relates back to the recording of the notice of *lis pendens* on May 5, 2005. Accordingly, Intervenors argue that their lien against the Parker Property existed before the freezing of Cheryl's assets and must be

3

treated as a lien to be satisfied before Plaintiff has access to any remaining funds.

Plaintiff disagrees and asserts that the judgment did not become a lien until the transcript was recorded well after the asset freeze was extended to Cheryl's assets, including the Parker Property. Relying upon the recognized broad discretion of the court to exercise equity jurisdiction, Plaintiff argues there should be a *pro rata* distribution to all investors and not just to a select few such as Intervenors who may have a special claim to the assets such as tracing. *See SEC v. Forex Asset Management LLC*, 242 F 3d 325, 331 (5th Cir. 2001).

Trustee also opposes Intervenors' claim of priority and focuses on the substance of Intervenors' claims, asserting that Intervenors are not entitled to constructive trust against the proceeds of the Parker Property, their notice of *lis pendens* was improper and void *ab initio*, and the default judgment does not collaterally estop or bar the Trustee.

In their replies, Intervenors disagree and again argue that they have a prior lien based upon the judgment lien which is a constitutionally protected property right.

I essentially agree with Intervenors. The nature of a judgment lien and the effect of the filing of the notice of *lis pendens* are matters of state law, here Colorado law. *See* 28 U.S.C. § 1964; *Winkler v. Andrews*, 614 F.2d 707, 712 (10th Cir. 1980); *In re Harms*, 7 BR 398, 399-100 (1980); *Dunkin v. Farm Credit Bank*, 940 F.2d 1099, 1101 (7th Cir. 1991). Under Colorado law, a judgment becomes a lien when the transcript is recorded. C.R.S. § 13-52-102(1). However, for priority purposes among competing creditors or claimants, the judgment lien relates back to the filing date of the notice of *lis pendens*. *See* C.R.S. § 38-35-110(1)(notice is given "from time of recording" that "any person or

4

persons thereafter acquiring" an interest in the property the interest "may be affected by the action described in the notice."); *Shuck v. Quackenbush*, 75 Colo. 592, 601, 327 P. 1041, 1045 (Colo. 1924); *James H. Moore & Assoc. Realty, Inc.* v. *Arrowhead at Vail*, 892 P.2d 367, 373-4 (Colo. App. 1994) (notice of *lis pendens* means anyone who thereafter acquires an interest in the property does so subject to the claim ultimately determined in the litigation).

Applying these principles to the facts of this case, I begin with the date of filing of the Intervenors' notice of *lis pendens*–May 5, 2005. At that time the Parker Property was titled solely in Cheryl's name but subject to the New Century Deed of Trust. On the day before, May 4, 2005, Judge Figa had issued the freeze order as to Joseph pursuant to 15 U.S.C. § 80a-41(d) which empowers this court to enjoin the Defendant Joseph and those "in active concert" with him from disposing of assets "held directly or indirectly" for his benefit. Arguably, that order applied to Cheryl and the assets in her name as well as those in Joseph's name so that neither could dispose of the Parker Property by their own volition. The May 4, 2005 freeze order did not, however, take jurisdiction over the Parker Property or seize it as authorized under the same section 80a-41(d) ("The court . . . may . . . take exclusive jurisdiction and possession of the . . . assets [of the defendant]") and as I ultimately did in my October 13, 2005 order. Accordingly, the May 4, 2005 freeze order did not directly affect the Parker Property title nor was it recorded to give notice under the Colorado statutes to subsequent parties.[2]

Although both Defendants were arguably prohibited from conveying an interest in

---

[2] No evidence is presented to suggest Intervenors had actual knowledge of the freeze order at the time they filed their lawsuit and their notice of *lis pendens*.

5

the Parker Property, the freeze order did not purport to prohibit a third party creditor such as Intervenors from claiming an interest in the Parker Property. Therefore, the May 4, 2005 freeze order did not prohibit Intervenors' action and it cannot be considered a prior interest in the Parker Property *vis-a-vis* Intervenors' notice of *lis pendens*.

Thereafter, by my June 3, 2005 order, Cheryl was added as a relief Defendant in these proceedings and the freeze order was extended to assets in her name, including the Parker Property. This freeze order was recorded but again the order did not take jurisdiction and possession of the Parker Property at that time. In any case, any priority claim based on the June 3, 2005 freeze order was subsequent to the notice of *lis pendens* and, pursuant to Colorado law, when the judgment was entered and the transcript recorded in August 2005, the judgment priority date related back to the May 5, 2005 recording of the notice of *lis pendens*. Accordingly, when this court ultimately took jurisdiction over the Parker Property by my October 13, 2005 order and authorized its sale, Intervenor held a judgment lien against the property which had to be satisfied just like the holder of the New Century Deed of Trust before any amounts were payable to Plaintiff for the benefit of other victims of Defendants' fraudulent activities.

I agree with Intervenors that this judgment lien has a priority under Colorado law and that constitutes a constitutionally protected property interest under the Fifth Amendment. There is no dispute that the judgment was final, no motions pursuant to Colo. R. Civ. P. 59 or 60 have been made and the judgment is non-appealable. No due process argument has been made that the state court proceedings were constitutionally

defective[3] so the judgment is entitled to full faith and credit. *See* 28 U.S.C. § 1738; *Bolling v. City and County of Denver*, 790 F.2d 67, 68 (10th Cir. 1986).

Trustee's collateral estoppel argument is misdirected as the issue is not whether the judgment is enforceable against a non-party but rather whether it constitutes a lien against specific property. Neither Plaintiff nor Trustee present any argument why the judgment is not a valid final judgment which, according to Colorado law, constitutes a lien against the Parker Property–a property right which is constitutionally protected under the Fifth Amendment.

Accordingly, it is ordered:

1. Intervenors' Motion to Determine Priority and Interests in Proceeds from Sale of Parker Property (doc. no. 81) is granted;

2. Intervenors have a valid judgment lien against the Parker Property in the amount of $266,192 which has a priority over the Plaintiff's claims on behalf of other victims;

3. The Trustee shall pay Intervenors the net proceeds of the sale of the Parker Property, together with accrued interest; and

---

[3]Plaintiff did not seek to intervene in the state court proceedings to challenge Intervenors' search for a judgment.

4. Plaintiff and Trustee shall, on or before December 12, 2008, submit a distribution plan of any remaining proceeds in the Trustee's possession and a proposal of how this proceeding may be brought to a close.

DATED at Denver, Colorado, on November 18, 2008.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge